IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ERICK C. DEBUSK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV335 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Erick Debusk ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on December 20, 2006, alleging a disability onset

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

date of April 15, 2006. (Tr. at 145-48, 150-54.)[2]  His applications were denied initially (Tr. at 57-58) and upon reconsideration (Tr. at 59-60).  Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 74.)  Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing by video teleconference on June 19, 2009. (Tr. at 12.)[3]  The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 22) and, on March 8, 2011, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since April 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
> . . . .
>
> 3. The claimant has the following severe impairments within the meaning of the Act, regulations, SSR 96-3p and Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985): HIV positive; bipolar disorder; and history of alcohol and cocaine abuse (20 CFR 404.1520(c) and 416.920(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #8].

[3] The ALJ's decision notes that "[a] previous hearing was held in this case by another judge but the recording of the hearing was lost. Thus, a new hearing de novo" took place in June, 2009. (Tr. at 12, 54.)

> . . . .
>
> 11. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can sit for 6 hours in an 8 hour day; he can stand or walk for a total of 3 hours in an 8 hour day, but he requires the option to sit at least every 20 minutes; he can lift 10 pounds frequently and 20 pounds occasionally; he may never climb ropes, ladders, or scaffolds; he may occasionally climb stairs, stoop, kneel, crawl, or crouch; he should work indoors with ready access to bathroom facilities; he should have no more than occasional contact with the general public; and he should not work at a forced or assembly line pace.

(Tr. at 15-17.)

The ALJ then considered the vocational expert's testimony regarding the above residual functional capacity ("RFC") and determined that, although Plaintiff was unable to perform any of his past relevant work, he could perform other jobs that exist in significant numbers in the national economy. (Tr. at 21.) Plaintiff therefore was not under a "disability," as defined in the Act, from his alleged onset date through the date last insured. (Tr. at 21-22.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity

---

[4] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

5

('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

from the following severe impairments: bipolar disorder, a history of alcohol and cocaine abuse, and HIV positive status. (Tr. at 15.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with myriad nonexertional restrictions including a sit/stand option, indoor work with ready access to bathroom facilities, no more than occasional contact with the general public, and no forced pace requirements. (Tr. at 16.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to his past relevant work. (Tr. at 20.) However, he concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other jobs available in the community and was therefore not disabled. (Tr. at 21.)

Plaintiff now challenges the ALJ's RFC assessment on two grounds. First, he contends that the ALJ failed to properly evaluate the mental RFC assessments completed by the State agency consultants. (Pl.'s Br. [Doc. #11] at 8-13.) Second, he argues that the ALJ erred in finding his subjective complaints less than credible. (Id. at 3-8.)[7] After a thorough review of both the administrative decision and the underlying records, the Court finds that substantial evidence supports the ALJ's assessment.

    A.    Mental RFC Assessment

Plaintiff first argues that the ALJ failed to adequately evaluate the State agency psychological assessments under the standards of 20 C.F.R. §§ 404.1527(e) and 416.927(e) as well as Social Security Ruling ("SSR") 96-6p. (Pl.'s Br. at 13.) This challenge raises two closely-

---

[7] Plaintiff presents his credibility argument first. However, because the evaluation of medical evidence informs the credibility assessment, the Court will first address the ALJ's treatment of the medical evidence.

related contentions. Plaintiff first contends that the mental RFC ("MRFC") provided by Dr. Nancy Herrera and later affirmed by Dr. Susan Killenberg conflicts with the ALJ's RFC assessment. Based on this alleged conflict, Plaintiff then argues that the ALJ erred by failing to indicate the weight he gave to the State agency MRFC. (Pl.'s Br. at 12.)

Plaintiff is correct that, when an ALJ evaluates a medical opinion, regardless of whether the source is treating or non-treating, he must "'explain in the decision the weight given' thereto and 'give good reasons in [his] . . . decision for the weight.'" Chirico v. Astrue, No. 3:10CV689, 2011 WL 6371315, at *5 (E.D. Va. Nov. 21, 2011) (unpublished) (quoting 20 C.F.R. § 404.1527(f)(ii); 416.927(f)(ii)). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thomas v. Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (unpublished) (citing Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)). Thus, "[t]he RFC assessment must always consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." See SSR 96-8p.

In the present case, the ALJ's decision specifically states that the State agency opinions support his RFC assessment. (Tr. at 20.) Thus, the ALJ considered and addressed the medical source opinions as required, and because the RFC assessment did not conflict with those opinions, no further explanation was necessary. Plaintiff now argues that the limitations assessed by Drs. Herrera and Killenberg are more restrictive than the ALJ's RFC assessment, and therefore require further explanation. However, Plaintiff never explains how or why he

8

believes the ALJ's formulation fails to sufficiently reflect the opinions of the State agency psychologists. Instead, Plaintiff only points to minor, and largely semantic, differences between the state agency assessments and the ALJ's RFC assessment, and simply posits that the ALJ's limitation to "no more than occasional contact with the public" is somehow less restrictive than the MRFC's restriction to "limited interpersonal demands." (See Pl.'s Br. at 12; Tr. at 16-17, 20, 336, 359.)[8] Plaintiff produces no evidence or basis to support this bald assertion.

Moreover, the evidence, including both the MRFCs by Dr. Herrera and Dr. Killenberg and Plaintiff's own testimony, clearly supports the ALJ's mental RFC finding. Plaintiff testified that he did not think he was "necessarily bad with dealing with people," but that it would make him "real nervous" if he had a job that required him to give people information on a regular basis. (Tr. at 48.) When asked if he could perform a similar job "in a closed setting like an office," Plaintiff testified that truancy due to physical or mental symptoms, rather than concerns over social situations, was his main problem in maintaining employment. (Tr. at 49.) Furthermore, the MRFCs themselves cite a "trend toward improved symptoms" (Tr. at 359), and include no restrictions in Plaintiff's ability to get along with coworkers or peers (Tr. at 335). In short, the ALJ made findings consistent with both the State agency opinions and the evidence as a whole at the time of Plaintiff's hearing. The Court therefore finds no error.

---

[8] More broadly, Dr. Herrera found Plaintiff capable of simple, routine, repetitive tasks ("SRRTs") in a low stress setting with limited interpersonal demands. (Tr. at 336.) Because Plaintiff identifies the limitation in interpersonal demands as the only area of conflict between this MRFC and the one set out in the ALJ's decision, the Court's review is limited to this narrow issue.

B.	Credibility

Plaintiff next challenges the ALJ's credibility assessment. Specifically, he argues that the ALJ failed to assign weight to Plaintiff's testimony or articulate why he found that Plaintiff's symptom allegations lacked credibility. (Pl.'s Br. at 7.) Instead, Plaintiff contends, the ALJ "summarize[d] the medical evidence of record without connecting his analysis to Plaintiff's testimony." (Id. at 8.) The question, therefore, is whether the ALJ correctly assessed Plaintiff's symptom allegations under the credibility framework set out in Craig, 76 F.3d at 594-95.

Craig provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 596.

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities.

10

Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, Plaintiff alleged HIV-related symptoms including constant neuropathy in his feet and flu-like symptoms, most notably diarrhea. (Tr. at 34-35, 45.) He also testified that, as the result of his bipolar disorder and other mental impairments, he experiences frequent panic attacks (Tr. at 38-39, 46-47) as well as depressive symptoms "about every three or four days" which keep him "in the fetal position in [his] house" (Tr. at 36, 42). The ALJ determined at step one of the Craig analysis that Plaintiff's documented impairments could reasonably be expected to cause his neuropathy, gastrointestinal problems, panic attacks, and depressive symptoms. (Tr. at 18.) However, the ALJ found at step two that substantial evidence failed to support the intensity and persistence of the symptoms alleged by Plaintiff to the extent they are inconsistent with the RFC assessment.

Most notably, Plaintiff does not challenge the opinions of the State agency physicians, who opined that Plaintiff could perform the full range of light work despite his impairments (Tr. at 327, 360), or those of the State agency psychologists, who opined that Plaintiff could perform simple, routine, repetitive tasks in a low stress setting with limited interpersonal demands (Tr. at 336, 359). As noted above, the ALJ explicitly based his RFC findings on those opinions as well as Plaintiff's extensive medical records. (Tr. at 20.) Moreover, even a cursory look at the RFC set out in the hearing decision also reveals that the ALJ accepted many of Plaintiff's subjective complaints, adding limitations as to standing, walking, climbing, stooping, kneeling, crawling, crouching, and access to bathroom facilities that appear nowhere in the medical opinions, but which were clearly intended to address Plaintiff's HIV symptoms, in particular his

neuropathy and bowel issues. (Tr. at 16-17.) Thus, it is clear that the ALJ specifically considered Plaintiff's symptom allegations in detail in formulating the RFC.

Although Plaintiff contends that the ALJ merely "summarize[d] the medical evidence of record without connecting his analysis to Plaintiff's testimony" (Pl.'s Br. at 8), the ALJ's summary, when read as a whole, indicates improvement in Plaintiff's condition over time as he remained clean and sober and took his medications consistently (see Tr. at 17-20). The ALJ specifically noted that Plaintiff "had some difficulty with reactions to a number of psychotropic medications as well as his earlier HIV medications." (Tr. at 20.) However, by August 14, 2008, Plaintiff's doctors estimated that he had a 92% chance of success with his current regimen of HIV medications (Tr. at 20, 387) and, although he continued to report neuropathy and nausea, his diarrhea had resolved (Tr. 388). At the time of his hearing, Plaintiff reported diarrhea about three times per day (Tr. at 45), which the ALJ accounted for with a restriction to indoor work with ready access to bathroom facilities (Tr. at 16). In terms of his mental symptoms, Plaintiff suggests no functional limitations beyond those opined by the State agency psychologists, and none are apparent from the record. Accordingly, the substantial evidence as of the date of Plaintiff's hearing supports the ALJ's decision.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 26th day of August, 2014.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge